# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SETH MURDOCK,

    Petitioner,

v.                                                          Civil Action No. 2:13cv44
                                                             (Judge Bailey)

TERRY O'BRIEN,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural Background

The *pro se* petitioner initiated this case on June 20, 2013, by filing a "Pro-Se Motion Challenging Place of Confinement Pursuant to 28 U.S.C. § 2241. (Doc. 1). On that same date, the petitioner was sent a Notice of Deficient pleading. On June 26, 2013, the petitioner filed this Court's approved form for a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241. On June 28, 2013, he paid the $5.00 filing fee. Accordingly, on July 11, 2013, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to show cause why the petition should not be granted.

On July 30, 2013, the respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. Because the petitioner is proceeding *pro se*, the Court issued a Roseboro Notice on July 31, 3013. On August 9, 2013, the petitioner filed a Response.

### II. Factual Background

The petitioner is currently incarcerated at the Federal Correctional Complex in Hazelton, West Virginia. He is serving a 30 month sentence imposed by the United States District Court for

1

the District of Vermont on October 29, 2012, following his conviction for Transportation of Stolen Vehicles in violation of 18 U.S.C. § 2312 & 2. (Doc. 17-2, p. 2). The petitioner's projected release date is November 15, 2013, via Good Conduct Time Release. (Doc. 17-2, p.1). On May 14, 2013, he was recommended for halfway house placement for a period of 90-120 days. (Doc. 17-3, p.1).

### III. Issues Presented

In his petition, the petitioner states that the ground for his petition is:

(1) the BOP has made a decision to limit his placement in a Residential Reentry Center for a period of 60 days by applying a categorical time period rather than an individualized assessment.

For relief, the petitioner then requests this Court order the BOP to consider the five factors set forth in § 3621(b) in determining the duration of his RRC placement. The petitioner also requests that this Court grant him a preliminary injunction and direct the BOP to use an individualized approach for his RRC placement and not the categorical 60 to 90 days awarded to all pre-release inmates at USP Hazelton.

In his response, the respondent argues that the petition should be dismissed because:

1. The petitioner failed to exhaust his administrative remedies as to the issues raised in his petition; and

2. The petitioner has been appropriately considered for RRC placement.

In reply, the petitioner argues that pursuing administrative remedies would be futile, and therefore, exhaustion of administrative remedies is not required. In addition, he argues that his consideration for RRC placement is moot because the BOP now refuses to place him due to a pending motion he filed with the sentencing court seeking to transfer his supervised release after he completes his term of imprisonment.

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

3

Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. **Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison*, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard of summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. V. Catrett,* 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine

issues of fact. *Celtotex* at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." *Anderson* at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* at 587 (citations omitted).

## V. The Second Chance Act

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008)

5

[BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18 U.S.C. 3621(b) are as follows:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

## VI. Analysis

### A. Exhaustion of Administrative Remedies

In the response to the petition, the respondent argues that the instant § 2241 petition should be dismissed because the petitioner failed to exhaust his administrative remedies. The petitioner maintains that the respondent's argument is without merit and is misplaced.

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions. However, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. § 2241. *See LaRue v. Adams*, 2006 WL 1674487 *5 - *7 (S.D.W.Va. June 12, 2006) (citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 113

(1997)).[1]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under § 2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under § 2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

### B. 18 U.S.C. § 3625

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by

---

[1] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

7

agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerated in 18 U.S.C. § 3621(b), as outlined previously in this Report. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular

institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred.

In the instant case, the petitioner first argues that the BOP executive management overseeing US Hazelton has adopted a "clear and inflexible policy" of only allowing 60-90 days or less of RRC placement for all prisoners irrespective of the length of their sentence, other than for those prisoners serving terms of 15 years or more. (Doc. 8-1, p. 5). Moreover, the petitioner alleges that the BOP, by referring him to an RRC in Vermont, is forcing him into a community where he has no home or family, no social infrastructure or friends and support grounds and no prospects for employment. The petitioner further alleges that he will be forced out into the street once his RRC time expires.

The undersigned is unclear why the petitioner believes he was recommend for sixty days placement in a RRC. It is clear that on May 14, 2013, the petitioner was recommended for 90 to 120 days of RRC placement. In making this recommendation, staff specifically noted that: "(1) There are available community corrections in his release area; (2) The nature and circumstances of the offense are that he is eligible for RRC placement as there are no extenuating circumstances that would preclude placement; (3) The history and characteristics of the inmate are: he intends to obtain gainful employment through a RRC placement; (4) the sentencing court in the District of Vermont did not make any statement on the Judgment and Commitment Order regarding RRC placement; and (5) There is no pertinent policy by the Sentencing Commission.(Doc. 17-3, p. 1).

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending his 90-120 day placement. Moreover, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

The undersigned recognizes that due to questions related to the ultimate location of his supervised release, the Petitioner's RRC placement has not been approved by the Community Corrections Management center in Philadelphia.[2] On April 25, 2013, approximately three weeks before his referral for RRC placement was signed by warden O'Brien, the petitioner filed a Motion with the United States District Court for the District of Vermont requesting that jurisdiction of his supervised release be transferred to Michigan. This appears to be the reason why his RRC placement was not approved. On August 22, 2013, a text only order was entered denying the Motion because the Eastern District of Michigan has refused to accept supervision, and the Court has no authority to reverse that decision. See 2:11-cr-00105-nks-1 (Doc. 89).[3] Therefore, the undersigned can only assume that efforts to place the petitioner in a RRC in Vermont will resume. However, it is clear that staff at BOP properly conducted the petitioner's RRC review, and the fact that he remains at USP Hazelton less than 90 days before his projected release date are through no fault of the staff at said institution.

## VI. **Recommendation**

---

[2] According to the BOP website, there are two CCM centers for the Northeast. One is in Philadelphia and the other in Pittsburgh. The petitioner's referral was sent to the CCM in Philadelphia.

[3] Available on PACER

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, Motion for Summary Judgment (Doc. 16) be **GRANTED,** and the petitioner's §2241 petition be **DENIED** and **DISMISSED with prejudice**. It is further recommended that the petitioner's Motion for Hearing (Doc. 3) and Motion for Expedited Hearing (Doc. 11) **be DENIED as Moot**; and his Motion/Request for Preliminary Injunction (Doc. 2 & 9) and Amended Emergency Motion for Preliminary Injunction (Doc. 21) be **DENIED** because it is clear that the petitioner has no chance of success for the same reasons he is not entitled to relief pursuant to his § 2241 petition.[4]

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record,

---

[4]The standard for granting injunctive relief in this circuit is set forth in Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342 (4th Cir.2009). As articulated in Real Truth, before a court may grant injunctive relief, the movant is required to establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Id.* at 346 (citations omitted).

as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 9-3-2013

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE